[Crim. No. 1927.   Third Dist.   Feb. 28, 1946.]

In re ARTHUR DE BEAU CARR on Behalf of DENZIL DYE, in Nature of Application for Writ of Error *Coram Nobis.*

Arthur De Beau Carr for Petitioner.

Robert W. Kenny, Attorney General, and James O. Reavis, Deputy Attorney General, for Respondent.

THE COURT. — This proceeding, in the nature of an application for a writ of error *coram nobis,* was instituted

on behalf of Denzil Dye who previously had been convicted of a violation of section 311 of the Penal Code, and at the time of the filing of the petition was confined in the Sacramento County Road Camp at Folsom.

The petition alleges among other things:

That the imprisonment of said petitioner is contrary to law and in violation of the guarantee of due process of law as contained in the Constitutions of the United States and the State of California, in the following particulars, to wit: That he pleaded guilty to and was convicted of the violation of section 311 of the Penal Code of the State of California in the Municipal Court of the City of Sacramento on the 19th day of April, 1945; that said Penal Code section among other things covers indecent exposure of the person, and procuring or counseling and assisting another so to expose himself in a public place; that said conviction and/or confession had been and was obtained through fraud, duress, mistake of fact, misrepresentation, and against the free will of the defendant; that said confession and/or plea was not voluntary; that said defendant, Denzil Dye, was and is hard of hearing, and thought until five days prior to the filing of said application that he had pleaded guilty to the misdemeanor of disturbing the peace; that his counsel had represented to him that he had the case ''fixed'' and that upon his, the petitioner's, plea of guilty to disturbing the peace, he would be fined only and not sentenced to any term of imprisonment nor charged with an offense involving immorality, since he was particularly concerned that such a charge should not be made because it would jeopardize his position as a federal employee.

The petition then sets out in detail the alleged facts on which these averments are based, stating in one paragraph which the referee has referred to as paragraph 1, page 7, and has found to be untrue: ''That defendant has a mastoid on his ear and is hard of hearing; that after the case was called, and while defendant stood alongside counsel, 'something' was read that defendant did not hear or listen to or pay attention to, but which 'something' was afterwards learned by your petitioner to have been a complaint charging violation of section 311 of the Penal Code; that said defendant was then asked whether he pleaded guilty or not guilty; that said defendant did not hear the question the first time and when asked again made no response, although

he heard the question asked the second time; that he did not for a short space of time enter any kind of plea when counsel turned and said, 'say, guilty,' at which time, defendant continued to demur, and then when nudged, said, 'guilty'.'' The petition concludes with a prayer that this court determine the questions involved and ''that said Denzil Dye, be restored to his liberty, and granted a fair trial upon the merits and/or for any, all and such other relief as to this Honorable Court may seem meet and proper in the circumstances.''

The sheriff of Sacramento County filed an answer and return to said petition, denying that the imprisonment of petitioner was illegal or without authority of law, and reciting the steps taken in the proceedings leading to such imprisonment.

On June 4, 1945, this court issued an order to show cause why the writ should not issue, and set a time for hearing the matter. The Honorable Warren Steel, judge of the Superior Court of Yuba County, was appointed as a referee to take the testimony of all the witnesses in the matter, said testimony to be directed to the issues of fact raised by the petition and answer filed herein, and at the conclusion thereof to prepare and file in this court findings of fact upon said issues, based on the testimony so taken.

The hearing was had as ordered, and the referee filed his findings and conclusions of fact, as follows:

## I.

''That on January 13, 1945, the petitioner, Denzil Dye, was arrested by a State Police Officer in Capitol Park in the City of Sacramento; that petitioner was placed in the City Jail of the City of Sacramento and on January 16, 1945, he was formally charged by complaint filed in the Municipal Court of the City of Sacramento with the crime of contributing to the delinquency of a minor, in that he persuaded and encouraged one Robert Ingle, a minor child of the age of fourteen years, to masturbate himself in the presence of said Denzil Dye; that thereafter, a preliminary examination was held and said Denzil Dye was held by the magistrate, to answer to the Juvenile Court of the County of Sacramento; thereafter an Information was filed in said Juvenile Court charging petitioner with the crime of contributing to the delinquency of a minor; thereafter petitioner entered a plea of not guilty to said charge and the cause was transferred to Department One of the Superior Court of the State of California in and for the County of Sacra-

mento, for jury trial; thereafter petitioner was put on trial before a jury which, on March 19, 1945, was discharged without having reached a verdict; hereafter retrial of said cause was duly set for April 19, 1945;

''That during all of the aforementioned proceedings, George E. Foote, attorney at law, represented said Denzil Dye as his attorney;

## II.

''That subsequent to the trial in the Superior Court aforementioned and prior to the date set for the retrial of said cause, said George E. Foote continued to represent said petitioner as his attorney.

## III.

''That during said last mentioned period of time, said attorney, George E. Foote, on numerous occasions contacted Deputy District Attorney, Edward McDonell, in charge of the prosecution of said case, for the purpose of securing the office of the District Attorney, to consent to the reduction of the charge of contributing to the delinquency of a minor then pending against said petitioner in consideration of the petitioner entering a plea of guilty to a charge of disturbing the peace; that Deputy District Attorney Edward McDonell on each of these occasions advised Attorney Foote that such a proposition was out of the question insofar as he, Deputy District Attorney Edward McDonell, was concerned, and further advised Attorney Foote that any such reduction of the charge would have to be authorized by John Quincy Brown, the District Attorney, or by Albert H. Mundt, the Chief Deputy District Attorney;

## IV.

''That thereafter and during said aforementioned period Attorney Foote contacted Albert H. Mundt, the Chief Deputy District Attorney, and repeated the same offer to Mr. Mundt that had been made to Mr. McDonell; that Mr. Mundt rejected said proposal and then made a counter proposal that if the petitioner would enter a plea of guilty to a charge of indecent exposure as defined in Subdivision 2 of Section 311 of the Penal Code of the State of California, that the District Attorney's Office would move to dismiss the Information pending in the Superior Court wherein the petitioner was charged with the crime of contributing to the delin-

quency of a minor; that Attorney Foote thereupon announced to Mr. Mundt that said proposal would probably be satisfactory;

## V.

"That thereafter Attorney Foote advised Deputy District Attorney McDonell that the petitioner would enter a plea of guilty to the charge of indecent exposure; that thereafter Deputy District Attorney McDonell was instructed by Chief Deputy District Attorney Mundt to prepare and file a Complaint against the petitioner charging petitioner with a Violation of Subdivision 2 of Section 311 of the Penal Code of the State of California; that thereafter, and on April 17, 1945, Deputy District Attorney McDonell prepared and caused to be filed the Complaint, a copy of which is marked Respondents' Exhibit No. 1;

## VI.

"That thereafter and on April 19, 1945, the petitioner was arraigned in the Municipal Court of the City of Sacramento upon the charge contained in the Complaint mentioned in Paragraph V hereinabove; that at the time of said arraignment petitioner was present as was his attorney George E. Foote; that the petitioner at that time answered his true name to be Denzil Dye and that he was represented in said matter by his attorney George E. Foote; that petitioner was then advised that he was charged with the crime of Violation of Section 311 of the Penal Code of the State of California; that the charging language of said Complaint was then read to said defendant by Deputy District Attorney McDonell; that after the reading of said charging language, petitioner was asked whether he pleaded guilty or not guilty; whereupon defendant personally entered a plea of guilty to the charge contained in said Complaint; that immediately after said plea of guilty had been entered by petitioner, Deputy District Attorney McDonell made a full and complete statement to the Judge of said Municipal Court, James M. McDonnell, of the facts upon which said Complaint was based; that immediately thereafter Deputy District Attorney McDonell, Attorney Foote and petitioner proceeded to the Superior Court where the Information charging petitioner with the crime of contributing to the delinquency of a minor was then pending; that at that time Deputy District Attorney McDonell made a motion to the Judge of said Superior

Court Raymond T. Coughlin to dismiss the Information against petitioner upon the grounds that the entry by petitioner of the plea of guilty to the aforementioned charge of Violation of Section 311 of the Penal Code and the acceptance of such plea by the District Attorney's Office was *res adjudicata* as to any further prosecution of petitioner on the charge of contributing to the delinquency of a minor; that at the time of making said motion Deputy District Attorney McDonell advised the Judge of the Superior Court of the charging language of the Complaint to which petitioner had entered a plea of guilty; that said motion was made in the presence of and within the hearing of said petitioner;

### VII.

"That thereafter, and at 2:00 o'clock P. M. on the 19th day of April, 1945, the petitioner was sentenced by James M. McDonnell, Judge of the Municiual Court of the City of Sacramento to serve 6 months in the County Jail, the last 4 months to be suspended upon the condition of defendant's good behavior for a period of two years;

### VIII.

"That during the period in which Attorney Foote carried on negotiations with the District Attorney's Office, said Attorney Foote advised his client that he thought he could get the District Attorney's Office to consent to accepting a plea of guilty to a charge of disturbing the peace; that on and shortly prior to April 19th, 1945, said Attorney Foote represented to said petitioner that he, Attorney Foote, had it all 'fixed' with the Judge and the District Attorney's Office whereby petitioner would plead guilty to a charge of disturbing the peace, and receive as punishment therefor only a fine of from $100.00 to $200.00;

### IX.

"That petitioner entered a plea of guilty in reliance upon the representation of Attorney Foote that he, Attorney Foote, had it all 'fixed' with the Judge and District Attorney's Office that he, petitioner, would suffer no imprisonment by reason of his plea of guilty, but would only pay a fine of $100.00 to $200.00.

### X.

"That at no time did any member of the District Attorney's staff or any Judge connected with any of the Courts

mentioned herein intentionally or unintentionally, or otherwise, say anything or do any act or commit any suggestion to the defendant, or in the presence of the defendant, that could have been relied upon by the defendant as substantial corroboration of the representation made by his attorney that the state or a responsible officer thereof had entered into a bargain purporting to commit the state to give the defendant a reward in the form of immunity or a lesser punishment that he might otherwise receive in exchange for a plea of guilty.

## XI.

"That the allegation of the Petition contained in Paragraph 1 on Page 7 of the Petition is not true; that defendant heard the proceedings had and taken at the time of his arraignment in the Municipal Court on the charge of Violation of Section 311 of the Penal Code of the State of California; that petitioner heard the charge read to him at that time and was aware of the nature and character of the charge itself.

"WHEREFORE, your Referee concludes as follows, to-wit:

"1. That petitioner received the advice and assurance of his attorney that responsible officers of the state had entered into a bargain to commit the state to give the defendant a reward in the form of immunity or lesser punishment that he might otherwise have received in exchange for a plea of guilty;

"2. That the representation made by Attorney Foote, as stated in Conclusion No. One above, was untrue;

"3. That there was no act or statement of any responsible state officer, innocent or otherwise, which was in good faith, relied on by defendant, and which apparently substantially corroborated the representation made by Attorney Foote and which actually operated to preclude the exercise by petitioner of his free will and judgment."

After having made a careful examination of the transcript of the testimony herein taken, we are of the opinion that the said findings are amply justified by the evidence, and they are therefore adopted as our own.

Likewise, from such examination of the evidence it is readily apparent that the main question for this court must concern a determination of whether or not the misrepresentation of petitioner's attorney was apparently corroborated

in a substantial manner by acts or statements of responsible officials and was in good faith relied upon by petitioner and actually did operate to preclude the exercise of his free will and judgment. It was this particular question which the Supreme Court had in mind when it stated in the case of *People* v. *Gilbert*, 25 Cal.2d 422, 443 [154 P.2d 657]:

"The most critical point is substantial deprivation of the exercise of the free will and judgment of the party through an act participated in by the state. Mere advice and persuasion or the expression of matters of opinion by his own attorney will not suffice to vitiate the plea. Neither will unwarranted or even wilfully false statements of factual matters by his attorney suffice. The private attorney is selected by the party and is his agent. But if the representation of the private attorney presents a purported commitment by a responsible state officer which if actually made would vitiate the plea and if the acts or statements of such state officer, although innocently done or made, apparently corroborate the representation, are in good faith and without negligence relied upon by the defendant, and in truth operate to prevent the exercise of his free will and judgment, then the state in its solicitude for fairness will not accept the benefit of a plea so given." (See, also, *In re Hough*, 24 Cal.2d 522, 527 [150 P.2d 448]; *People* v. *Schwarz*, 201 Cal. 309, 314-315 [257 P. 71]; *People* v. *Lewis*, 64 Cal.App.2d 564, 565 [149 P.2d 27]; *People* v. *Lyle*, 21 Cal.App.2d 132, 137 [68 P.2d 378].)

While the referee found that petitioner placed reliance upon the misrepresentations of his counsel that he had matters fixed with the responsible officials and that petitioner, in pleading guilty to a charge of disturbing the peace only, would receive nothing more than a fine, it does not follow that petitioner at the time of entering his plea was unaware of and did not understand the nature of the charge as read and thought he was only pleading guilty to a charge of disturbance of the peace. On the contrary, the evidence and the subsequent findings alike sustain the conclusion that petitioner was aware of the nature of the morals charge which was read to him and to which his plea of guilty was personally entered.

There is no testimony of any kind to refute the statement of the judge of the municipal court and that of the prosecuting attorney that before petitioner entered his plea of guilty to the crime of a violation of section 311 of the Penal Code

of the State of California, said prosecuting attorney, standing within a few feet of the petitioner, read aloud, in an ordinary voice and the usual tempo, the charging part of the complaint to the effect that petitioner ''did then and there, before the filing of this complaint, and within one year prior thereto, willfully and unlawfully and lewdly procure, counsel and assist one Robert Ingle, a human being, to expose himself, the said Robert Ingle, in a manner offensive to decency. . . .'' It is clear that the representatives of the state intended that petitioner should hear and fully comprehend the nature of the complaint filed against him. It must further be noted that, after petitioner had entered his plea and before he was sentenced, a statement of the facts of the case was made to the judge in petitioner's presence by a member of the district attorney's office. This circumstance likewise should have made petitioner aware of the precise nature of the situation, at a time when he might still have indicated a desire to withdraw his plea of guilty had he desired so to do. A similar opportunity was presented when petitioner appeared in the superior court in the company of his attorney and the prosecuting attorney for the purpose of dismissing the original charge, at which time the court, in the presence of petitioner, was advised of the charging language of the complaint to which petitioner had pleaded guilty in the municipal court.

The instant case is in many respects similar to the previously cited case of *People* v. *Gilbert, supra.* Doubtless, the pattern of the petition, and the proof herein, were fashioned with this decision in mind. In that case, as in the present one, there was evidence that the defendant had been led by his attorney to believe that he would be given a lesser punishment in exchange for a plea of guilty. And in that case as in this, statements of the prosecuting attorney and the trial judge, while entirely proper and innocent in themselves, were nevertheless misquoted and misstated by petitioner's attorney so as to make it appear that they were tantamount to a guarantee of lesser punishment. It therefore is not difficult to apply the principles of that decision to this case. There is, however, this vital distinction between the two cases: In the Gilbert case, the record before the Supreme Court was such that said court could not determine whether or not there was a sufficient showing of the critical extrinsic factors. The findings were not drawn with a view to the determination of the issue of the validity of the plea or pleas in question. Thus the court observed, at pages 442, 443:

"The findings of fact herein were evidently drawn with the view of modifying the original judgments but were not drawn in respect to all of the factual issues with which the court would have been concerned if a clear cut issue as to the validity of the defendants' pleas had been before it. We are, therefore, unable to determine satisfactorily upon this record that the pleas are either necessarily valid or necessarily invalid.

. . . .

"As previously stated the record contains evidence tending to show such a situation. It also contains evidence tending to negative some, if not all, of its elements."

In the case at bar, the petition, return and findings were directed to the clear-cut issue of the validity of petitioner's plea. The findings, following the language of the Supreme Court in the Gilbert case, declared the existence of the factual elements which support the validity of said plea and the non-existence of the factual elements which would invalidate the plea, which findings are amply sustained by the record.

The writ is denied.